## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 7 |
| James Edward Robinson and Carolyn Flemming Robinson, | Case No. 14-60091-MHM |
| Debtors. | |
| | |
| Nationstar Mortgage LLC, | |
| Creditor, | |
| V. | Contested Matter |
| James Edward Robinson and Carolyn Flemming Robinson, Debtors, and William J. Layng, Jr., Chapter 7 Trustee, | |
| Respondents. | |

### NOTICE OF ASSIGNMENT OF HEARING

PLEASE TAKE NOTICE that Nationstar Mortgage LLC, for itself, its successors and assigns, has filed a Motion for Relief from Stay and related papers with the Court seeking an order granting relief from the automatic stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from Stay in, Room 1204, United States Bankruptcy Courthouse, 75 Spring Street, Atlanta, GA 30303-3311 at 2:15 pm on the 10th day of March, 2015.  Your rights may be affected by the Court's ruling on these pleadings.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)  If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to

consider your views, then you and/or your attorney must attend the hearing.  You may

file a written response to the pleading with the Clerk at the address stated below, but you

are not required to do so.  If you file a written response, you must attach a certificate

stating when, how and on whom (including addresses) you served the response.  Mail or

deliver your response so that it is received by the Clerk at least two business days before

the hearing.  The address for the Clerk's Office is: United States Bankruptcy Court,

Richard B. Russell Federal Building, 75 Spring Street, SW, Room 1340, Atlanta, GA

30303. You must also mail a copy of your response to the undersigned at the address

stated below.

In the event a hearing cannot be held within thirty (30) days from the filing of said

Motion, as required by 11 U.S.C. Section 362, Creditor, by and through counsel, waives

this requirement and agrees to the next earliest possible date, as evidenced by the

signature below. If a final decision is not rendered by the Court within sixty (60) days of

the date of the request, Creditor waives the requirement that a final decision be issued

within that period.

The undersigned consents to the automatic stay remaining in effect with respect to

Creditor until the court orders otherwise.

Dated: February 9, 2015

Shapiro, Swertfeger & Hasty, LLP

/s/ Taylor Mansell

Taylor Mansell
Georgia Bar No. 940461
tmansell@logs.com
2872 Woodcock Blvd.
Suite 100
Atlanta, GA 30341-3941
(770) 220-2535

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 7 |
| James Edward Robinson and Carolyn Flemming Robinson, | Case No. 14-60091-MHM |
| Debtors. | |

| | |
|---|---|
| Nationstar Mortgage LLC, | |
| Creditor, | |
| V. | Contested Matter |
| James Edward Robinson and Carolyn Flemming Robinson, Debtors, and William J. Layng, Jr., Chapter 7 Trustee, | |
| Respondents. | |

## MOTION FOR RELIEF FROM STAY ,
## WAIVER OF HEARING PURSUANT TO 11 U.S.C. § 362(e)
## AND REQUEST FOR WAIVER OF RULE 4001(a)(3)

COMES NOW Nationstar Mortgage LLC, for itself, its successors and assigns (hereinafter known as "Movant"), and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract, including, but not limited to, the right to foreclosure on certain real property.

2.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor(s) have an interest. A copy of the Security Deed and assignments (if applicable) are attached hereto and made a part hereof.  Said real property is security for a Promissory Note, and is commonly known as 2216 Park Manor Lane, Snellville, Georgia 30078. A copy of the Note is attached hereto and made part hereof.

3.

There has been a default in payment of the monthly installments required pursuant to the Promissory Note.  As of February 2, 2015, nine (9) payment(s) have been missed.

4.

As of February 2, 2015, the unpaid principal balance is $248,589.67, and interest is due in accordance with the agreement.

5.

Because there may be little or no value in the property over the amount owed on the property, Movant is not adequately protected and there is cause for relief from the automatic stay.

6.

Because there may be little or no equity in the property which could benefit the estate, the Trustee's interest should be abandoned.

7.

Because the Security Deed so provides, Debtor is responsible for Movant's reasonable attorney fees.

8.

Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

9.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options, including, but not limited to, loan modifications, deeds in lieu of foreclosure, short sales, and/or any other potential loan workouts or loss mitigation agreements.

10.

If the Debtor(s) are interested in initiating review for loss mitigation then the Movant can be contacted at the following:

> Nationstar Mortgage LLC
> Loan Modifications
> P.O Box 619097
> Dallas, TX 75261-9741
> 1-877-343-5602

11.

Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

WHEREFORE, Movant prays as follows:

(a)    That this Court issue an Order terminating the Automatic Stay with respect to the above-referenced property effective as of the date of the hearing; including, but not limited to, foreclosure of the property, gaining possession of the property and seeking to judicially confirm the sale, if appropriate.

(b)    That this Court authorize Movant to foreclose its security interest in said property in accordance with any applicable law as of the date this Court orders termination of the stay without further order of this Court;

(c)    That Movant be awarded reasonable attorney's fees and expenses.

(d)    That Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options, including, but not limited to, loan modifications, deeds in lieu of foreclosure, short sales, and/or any other potential loan workouts or loss mitigation agreements.

(e)    That the Court order that Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable so that Movant may immediately enforce and implement an order granting relief from the automatic stay;

(f) That Movant have such other and further relief as this Court deems just and equitable.

Dated: <u>February 9, 2015</u>

                                    Shapiro, Swertfeger & Hasty, LLP

                                    <u>/s/ Taylor Mansell</u>
                                    Taylor Mansell
                                    Georgia Bar No. 940461
                                    tmansell@logs.com
                                    2872 Woodcock Blvd.
                                    Suite 100
                                    Atlanta, GA 30341-3941
                                    (770) 220-2535

47962
00782

BK 4 7 9 6 2 PG 0 7 8 2

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

07 JUN -7 PM 2:00

TOM LAWLER, CLERK

CARL W. WRIGHT
PO BOX 790
LOGANVILLE, GA 30052
(770) 513-7400

GEORGIA INTANGIBLE TAX PAID
$ _717.00_
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

After Recording Return To:
CARL W. WRIGHT
4470 ATLANTA HWY, STE B
LOGANVILLE          , GA        30052

Notice: This mortgage is subject to special rules under the Georgia Fair Lending Act.

Purchasers and assignees of this mortgage may be liable for all claims and defenses by the borrower with respect to the mortgage.

Notice: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor. ────────────────── [Space Above This Line For Recording Data] ──────────────────

# SECURITY DEED

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "**Security Instrument**" means this document, which is dated **May 30, 2007**                          , together with all Riders to this document.

(B)  "**Borrower**" is **JAMES E ROBINSON SR, CAROLYN F ROBINSON**

Borrower is the grantor under this Security Instrument.

(C)  "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)  "**Lender**" is **Home America Mortgage, Inc.**
Lender is a                                                                          organized and existing under
the laws of **GA**                                                                     . Lender's address is
**950 Grayson Hwy,, Lawrenceville          , GA        30045**

(E)  "**Note**" means the promissory note signed by Borrower and dated **May 30, 2007**                     . The Note states that Borrower owes Lender **Two Hundred Thirty Eight Thousand Eight Hundred and no/100**
Dollars (U.S. $ **238,800.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 01, 2037**                      .

(F)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3011 1/01

ITEM T9879L1 (0011)—MERS                                  *(Page 1 of 12 pages)*                GREATLAND ■
                                                                                To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0082727                     

4V

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider

☐ Balloon Rider    ☒ Planned Unit Development Rider    ☒ Other(s) [specify] **WAIVER OF BORROWER'S RIGHTS/CLOSING ATTORNEY'S AFFIDAVIT**

☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.




TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
**County**                          of                          **Gwinnett**                          :
[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
**See Attached Exhibit A.**

LL 52, 6HT DIST, GWINNETT COUNTY GA LOT 85 BLK A MONTREAUX-TOWNE

which currently has the address of                          **2216 PARK MANOR LANE**
                                                                          [Street]

**Snellville**                          , Georgia                          **30078**                          ("Property Address"):
[City]                                    [Zip Code]

   TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or




BK 4 7 9 6 2 PG 0 7 8 5

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9678L4 (0011)—MERS

(Page 4 of 12 pages)

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131





or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

BK 4 7 9 6 2 PG 0 7 8 7

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9679L6 (0011)—MERS                    *(Page 6 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131





BK 4 7 9 6 2 P G 0 7 8 8

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9679L7 (0011)—MERS

*(Page 7 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131




BK47962PG0789

applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.   Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.   Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3011 1/01

ITEM T9879L8 (0011)—MERS                      *(Page 8 of 12 pages)*                    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131




limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property



BK47962PG0791

and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                    Form 3011 1/01
                                                                                                              GREATLAND ■
ITEM T9879L10 (0011)—MERS                        *(Page 10 of 12 pages)*            To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



BK 4 7 9 6 2 PG 0 7 9 2

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



BK47962PG0793

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____

_____ (Seal)
JAMES E ROBINSON SR                -Borrower

_____ (Seal)
CAROLYN F ROBINSON               -Borrower

Notary Public,                    County

My commission expires:           Walton

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9879L12 (0011)—MERS          (Page 12 of 12 pages)

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □Fax: 616-791-1131

BK47962PG0794

**FILE NUMBER**

**NAME AND ADDRESS OF BORROWER**          JAMES E. ROBINSON, JR.
                                          CAROLYN F. ROBINSON
                                          2216 PARK MANOR LANE
                                          SNELLVILLE, GA

**NAME AND ADDRESS OF SELLER**            DAMASCUS HOMES, LLC.

                                          PO BOX 1726
                                          LOGANVILLE, GA

**NAME AND ADDRESS OF LENDER**            HOME AMERICA MORTGAGE, INC.
                                          950 GRAYSON HWY
                                          LAWRENCEVILLE, GA 30045

**PROPERTY LOCATION**                     2216 PARK MANOR LANE
                                          SNELLVILLE, GA 30078

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 52 OF THE 6TH
DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING LOT 85, BLOCK "A", MONTREAUX
IN-TOWNE, UNIT ONE F.K.A. THE ESTATES AT PARKWOOD, UNIT TWO, AS PER PLAT
THEREOF RECORDED IN PLAT BOOK 118, PAGES 191-192, GWINNETT COUNTY  RECORDS,
WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE.

BK47962PG0795

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **30th** day of **May 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Home America Mortgage, Inc.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2216 PARK MANOR LANE
Snellville, GA  30078**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS.

(the "Declaration"). The Property is a part of a planned unit development known as

**MONTREAUX IN TOWNE**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

MULTISTATE PUD RIDER—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3150 1/01

ITEM T1622L1 (0011)    *(Page 1 of 2 pages)*    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131




BK4 7962PG0796

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this PUD Rider.

_____ (Seal)
JAMES E ROBINSON SR                -Borrower

_____ (Seal)
CAROLYN F ROBINSON                 -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

**MULTISTATE PUD RIDER**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        Form 3150 1/01

GREATLAND ■
ITEM T1622L2 (0011)                      *(Page 2 of 2 pages)*        To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK 4 7 9 6 2 PG 0 7 9 7

GEORGIA- Conv

GRANTOR: JAMES E ROBINSON SR, CAROLYN F ROBINSON

LENDER:   Home America Mortgage, Inc.

DATE OF SECURITY DEED: 5/30/2007

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:(1)
ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER
OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY
NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY
NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER
THE PROVISION OF THE PARAGRAPH 22 HEREOF; (2) WAIVES ANY AND ALL
RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH
AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE
VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES,
OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO
JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR
REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS
SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 22 HERREOF; (3)
ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND
SPECIFICALLY THIS PARAGRAPH AND PARAGRAPH 22 OF THIS DEED AND
ANY ALL QUESTIONS REGARDING LEGAL EFFECT OF SAID DEED AND ITS
PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR HAS BEEN
AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S
CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL
WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE
KNOWINGLY, INTENTIONALLY AND WILLINGLYBY GRANTOR AS PART OF
A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE
PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE
SECURITY DEED.

O.C.G.A. SECTION 7-1-1014 (3) REQUIRES THAT WE INFORM YOU THAT IF
YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT
YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU
MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE
MORTGAGE LOAN THROUGH FORCLOSURE.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered
in the presence of:

_____                    _____ (Seal)
                                             Grantor JAMES E ROBINSON SR
                                             _____ (Seal)
_____                    Grantor CAROLYN F ROBINSON
NOTARY PUBLIC                                _____ (Seal)
                                             Grantor
                                             _____ (Seal)
                                             Grantor
                                             _____ (Seal)
                                             Grantor
                                             _____ (Seal)
                                             Grantor

BK 4 7 9 6 2 PG 0 7 9 8

47962
00798

## CLOSING ATTORNEY'S AFFIDAVIT

RE: Borrower(s):  **JAMES E ROBINSON SR, CAROLYN F ROBINSON**

Lender:    **Home America Mortgage, Inc.**

Date:    **5/30/2007**

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof, thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights.

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of the Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
Closing Attorney

Sworn and subscribed before me
this

_____
Notary Public



49911
00736

When Recorded Return To:
McCurdy and Candler, LLC
Attn: GA Foreclosure Department
250 E Ponce De Leon Avenue
Suite 600
Decatur, GA 30030

BK 4 9 9 1 1 PG 0 7 3 6

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY. GA.

2010 JAN 25 PM 2: 00

TOM LAWLER. CLERK

## ASSIGNMENT OF DEED TO SECURE DEBT
## GEORGIA

This **ASSIGNMENT OF DEED TO SECURE DEBT** is made and entered into as of the 13TH day of AUGUST, 2009, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, whose address is 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, ("Assignor) to **OCWEN LOAN SERVICING, LLC** whose address is 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **GWINNETT**, County, State of **GEORGIA**, as follows:

Grantor: JAMES ROBINSON AND CAROLYN ROBINSON
Grantee:  Mortgage Electronic Registration Systems, Inc
Document Date: MAY 31, 2007
Amount: $236,800.00
Date Recorded: 06 07 2007
Book/Volume/Docket/Liber: 47962
Page/Folio:  782
Property Address: 2216 PARK MANOR LANE, SNELLVILLE, GA

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges. This Assignment is made without recourse.

DATED: DECEMBER 16, 2009

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

BY: _____
NAME: Scott W. Anderson
TITLE: Vice President

**ATTESTED BY:**
_____
NAME: Juan A. Pardo
TITLE: Assistant Secretary

Witness:

(1) _____
Jonathan Burgess

(2) _____
Laura Buxton

STATE OF FLORIDA        )
                        )SS.
COUNTY OF PALM BEACH)

The foregoing instrument was acknowledged before me on this 16TH day of DECEMBER, 2009, by Scott W. Anderson, the Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., on behalf of the corporation. He is personally known to me.

_____
Notary Public

Prepared By: Laura Buxton
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835

NOTARY PUBLIC-STATE OF FLORIDA
Elsie Ramirez
Commission # DD914835
Expires: AUG. 09, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MERS Ph.#: (888) 679 – 6377

7

BK53226 PG0131

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2014 NOV 10 PM 12:21

RICHARD ALEXANDER, CLERK

308711

Recording Requested By Nationstar Mortgage
When Recorded Return To DOCUMENT ADMINISTRATION, Nationstar Mortgage 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361

**CORPORATE ASSIGNMENT OF SECURITY DEED**

Gwinnett, Georgia
SELLER'S SERVICING # ▮▮▮▮ ROBINSON SR "

Date of Assignment August 21st, 2014
Assignor OCWEN LOAN SERVICING, LLC BY NATIONSTAR MORTGAGE LLC AS ATTORNEY-IN FACT at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067
Assignee NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DR, LEWISVILLE, TX 75067

Executed By JAMES E ROBINSON SR, CAROLYN F ROBINSON To MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR HOME AMERICA MORTGAGE INC
Date of Security Deed 05/30/2007 Recorded 06/07/2007 in Book/Reel/Liber 47962 Page/Folio 0782 In the County of Gwinnett, State of Georgia

Property Address 2216 PARK MANOR LANE, SNELLVILLE, GA 30078

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $238,800.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage

OCWEN LOAN SERVICING, LLC BY NATIONSTAR MORTGAGE LLC AS ATTORNEY-IN FACT
On 8/21/2014

By _Melissa Kersenbrock_
Melissa Kersenbrock
Assistant Secretary

WITNESS                                         WITNESS
_Crystal Kraski_                               _Tina L Rist_
Crystal Kraski                                  Tina L Rist

STATE OF Nebraska
COUNTY OF Scotts Bluff
On 8/21/2014, before me, Loran C Shaw, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared Melissa Kersenbrock, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal,

_Loran C Shaw_
Loran C Shaw
Notary Expires 5-22-2017

A GENERAL NOTARY-State of Nebraska
LORAN C SHAW
My Comm. Exp. May 22, 2017

(This area for notarial seal)

0087667

# NOTE

| **May 30, 2007** | **Snellville** | **Georgia** |
|---|---|---|
| [Date] | [City] | [State] |

**2216 PARK MANOR LANE**
**Snellville, GA 30078**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **238,800.00**         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Home America Mortgage, Inc.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.3750**%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **July 01, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 01, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Home America Mortgage, Inc.**          **, 950 Grayson Hwy,, Lawrenceville         , GA          30045**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $**1,489.80**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000**% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01



this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

  If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)    _____ (Seal)
JAMES E ROBINSON SR    -Borrower    CAROLYN F ROBINSON    -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                        Borrower                             Borrower

*[Sign Original Only]*

Without recourse, pay to the order of
Taylor, Bean & Whitaker Mortgage Corp.

_____
Erla Carter-Shaw
Attorney-In-Fact

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
Mortgage Corp.

_____
Erla Carter-Shaw, E.V.P.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01
GREATLAND ■
ITEM T1646L3 (0011) *(Page 3 of 3 pages)* To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 7 |
| James Edward Robinson and Carolyn Flemming Robinson, | Case No. 14-60091-MHM |
| Debtors. | |

| | |
|---|---|
| Nationstar Mortgage LLC, | |
| Creditor, | |
| V. | Contested Matter |
| James Edward Robinson and Carolyn Flemming Robinson, Debtors, and William J. Layng, Jr., Chapter 7 Trustee, | |
| Respondents. | |

## CERTIFICATE OF SERVICE

This is to certify that on the ___9th___ day of February, 2015, I served a copy of the within Notice of Assignment of Hearing, together with a copy of the Motion for Relief from Stay filed in this bankruptcy proceeding, on the Respondents by first-class mail addressed as follows:

James Edward Robinson
2216 Park Manor Lane
Snellville, GA 30078

Carolyn Flemming Robinson
2216 Park Manor Lane
Snellville, GA 30078

Brian S. Limbocker
Limbocker Law Firm, LLC
Bldg. 800 - Suite 140
2230 Towne Lake Parkway
Woodstock, GA 30189

William J. Layng, Jr.
Suite 1500
400 Galleria Parkway
Atlanta, GA 30339

Shapiro, Swertfeger & Hasty, LLP

/s/ Taylor Mansell
_____
Taylor Mansell
Georgia Bar No. 940461
tmansell@logs.com
2872 Woodcock Blvd.
Suite 100
Atlanta, GA 30341-3941
(770) 220-2535